UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JIMMY JOHNATHAN PINTO,

CASE NO.: **10 CIV 7278 (JGK)**

Plaintiff,

**FIRST AMENDED COMPLAINT
AND
JURY TRIAL DEMAND**

v.

KIA MOTORS AMERICA, INC.;
DAVID & GOLIATH, LLC;
KOBALT MUSIC PUBLISHING
AMERICA, INC; BILLION DOLLAR
BALLERS ENTERTAINMENT, LLC;
WILLIAM BRYANT SHOOK;
ZLATKO BOBBY HUKIC, p/k/a MARZ;
ZYNC MUSIC, INC.; TURNER
BROADCASTING SYSTEM, INC.;
MTV NETWORKS, INC.; DISCOVERY
COMMUNICATIONS, INC.; NATIONAL
BROADCASTING COMPANY, INC.;
AMERICAN BROADCASTING
COMPANIES, INC.; CBS BROADCASTING,
INC.; FOX BROADCASTING COMPANY;
AUDIO & VIDEO LABS, INC. d/b/a DISC
MAKERS, INC.; SLUSH PUPPIE
TRI-STATE, INC. d/b/a
GREATINDIEMUSIC.COM; NATIONAL
CINEMEDIA, LLC; SCREENVISION
CINEMA NETWORK, LLC; and
DOES 1 through 10, inclusive,



Defendants.

-------------------------------------------------------------X

    JIMMY JOHNATHAN PINTO, by and through his undersigned attorneys, submits to the

Court his First Amended Complaint, and for his causes of action against Defendants Kia Motors

America, Inc., David & Goliath, LLC, Kobalt Music Publishing America, Inc., Zync Music, Inc.,

William Bryant Shook, Zlatko Bobby Hukic p/k/a "Marz," Billion Dollar Ballers Entertainment,

LLC, Turner Broadcasting System, Inc., MTV Networks, Inc., Discovery Communications, Inc.,

National Broadcasting Company, Inc., American Broadcasting Companies, Inc., CBS Broadcasting, Inc., Fox Broadcasting Company, Audio & Video Labs, Inc. d/b/a Disc Makers, Inc., Slush Puppie Tri-State, Inc. d/b/a GreatIndieMusic.com, National Cinemedia, LLC, and Screenvision Cinema Network, LLC, alleges as follows:

## INTRODUCTION

In the twenty-first century digital landscape, companies and artists alike must compete for an increasingly narrow consumer attention span with increasingly innovative marketing solutions. One such solution is the synergy between music and commercial products, whereby a popular tune grabs the consumer's attention, which is then directed to the virtues of the product. In this way, a company depends on the unique appeal of an artist's work to secure the consumer's focus, and in turn, an artist depends on the company's distribution capital to reach the ears of potential fans everywhere. The relationship can be extremely profitable for all parties involved, so long as *all* proper parties are involved. However, to the extent that the original artist or creator of the music is excluded from these relationships by way of fraud, theft and malfeasance, then the exploitation of that artist's creation, and the illicit earnings generated from such exploitation, work a grievous injustice.

Kia Motors America, Inc. attempted this same synergy when it launched its recent "A New Way To Roll" campaign in March 2009, designed to coincide with the release of its new crossover utility vehicle, the Kia Soul. The campaign relied heavily on the appeal of new and emerging artists, including Chicago-based Zlatko Hukic, p/k/a "Marz." More specifically, the campaign made use of Marz's "Do What You Do feat. Pack and Mumiez," which was synchronized with a sixty-second video play featuring hamsters driving the Kia Soul while

jamming to the song. Both Marz and William Bryant Shook claim credit as co-authors of "Do What You Do."

Tragically, Marz and Shook's claims in this regard are entirely false. Rather, "Do What You Do" had been derived from the original work of Jimmy Pinto, a young and independent producer of electronic musical compositions and sound recordings. In March 2008, Jimmy produced an original beat titled "Feedback." From there begins a modern story of fraud, artifice and greed whereby Shook digitally hijacked a copy of "Feedback" from Jimmy's online producer account to manufacture what would become the cornerstone and prize of a critically acclaimed advertising campaign.

In fact, the wrongful exploitation of Jimmy's beat laid the foundation for the fame and financial success of a series of parties along a chain of commerce that begins with Shook and ends with every Kia Motors dealership nationwide. The hugely successful campaign, including the commercial featuring "Do What You Do," contributed significantly to record setting sales of the Kia Soul. The campaign also garnered David & Goliath, LLC, a Los Angeles based advertising agency responsible for producing the campaign, nationwide attention and accolades. Moreover, the campaign's extensive exposure on television, in movie theaters, and online raised the profile of both Marz and his label, Billion Dollar Ballers Entertainment, LLC. Capitalizing on the success of the campaign and his growing fame, Marz recently released an album featuring "Do What You Do" titled "Marz Presents - Billion Dollar Ballers – Candy Days." Shook shares directly in Marz's success by claiming co-authorship of "Do What You Do."

The twenty first century digital landscape can afford companies and artists alike incredible opportunities for collaboration and mutual benefit. To the extent that artists are wrongfully excluded from those benefits, U.S. Copyright law provides a very clear and

3

established remedy.  So stands Jimmy Pinto before this Court, fleeced of his original work and the benefits of its exploitation in nearly every media format imaginable, and seeks redress from those that have profited substantially from their ill gotten gains.

<u>**PARTIES**</u>

1.      Plaintiff Jimmy Johnathan Pinto (hereinafter "Plaintiff") is an individual residing in Lynbrook, New York.  Plaintiff is a producer of musical compositions and sound recordings.

2.      Defendant Kia Motors America, Inc (hereinafter "KMA") is a California corporation with its principal place of business located in Irvine, California.  KMA is the sales, marketing and distribution arm of Kia Motors, Inc. (hereinafter "Kia Motors"), a South Korean corporation headquartered in Seoul, South Korea.  Kia Motors manufactures and sells the Kia Soul.

3.      Defendant David & Goliath, LLC (hereinafter "David & Goliath") is a Delaware limited liability company registered to do business in the state of New York with its principal place of business in Los Angeles, California.  David & Goliath is an independent advertising agency.

4.      Defendant Kobalt Music Publishing America, Inc. (hereinafter "Kobalt") is a Delaware corporation with its principal place of business in New York City, New York.

5.      Defendant Zync Music, Inc. (hereinafter "Zync Music") is a New York corporation registered to do business in the State of New York.  Zync Music is a music licensing company that places music in advertising, film, television, trailers and video games.

6.      Defendant Zlatko Bobby Hukic, p/k/a "Marz," (hereinafter "Marz") is an individual domiciled in Chicago, Illinois.  On or around December 19, 2005, Marz formed a record label by the name of Billion Dollar Ballers Entertainment, LLC.

7.     Defendant Billion Dollar Ballers Entertainment, LLC (hereinafter "BDB") is a Delaware limited liability company with its principal place of business in Chicago, Illinois. BDB is an independent record label owned and operated by Marz.

8.     Upon information and belief, Defendant William Bryant Shook (hereinafter "Shook") is an individual domiciled in Riverside, California.

9.     Defendant Turner Broadcasting System, Inc. (hereinafter "TBS") is a Georgia corporation registered to do business in the State of New York.  TBS creates and programs branded news, entertainment, animation and young adult media environments on television for consumers in the United States.  TBS owns and controls a number of television networks and cable channels, including but not limited to Adult Swim.

10.     Defendant MTV Networks, Inc. (hereinafter "MTV") is a Delaware corporation with its principal place of business in New York City, New York.  MTV owns and controls several premium cable channels, including MTV and Comedy Central.

11.     Defendant Discovery Communications, Inc. (hereinafter "Discovery") is a Maryland corporation registered to do business in the State of New York. Discovery is the world's number one non-fiction media company reaching more than one and a half billion cumulative subscribers through over one hundred worldwide networks, including the premium cable channel, Discovery Channel.

12.     Defendant National Broadcasting Company, Inc. (hereinafter "NBC") is a Delaware corporation with its principal place of business in New York City, New York.  NBC is a major American television network.

13.     Defendant American Broadcasting Company, Inc. (hereinafter "ABC") is a Delaware corporation registered to do business in the State of New York and with its principal place of business in New York City, New York.  ABC is a major American television network.

14.     Defendant CBS Broadcasting, Inc. (hereinafter "CBS") is a New York corporation.  CBS is a major American television network.

15.     Defendant Fox Broadcasting Company (hereinafter "Fox") is a Delaware corporation registered to do business in the State of New York and with its principal place of business in Los Angeles, California.  Fox is a major American television network.

16.     Defendant Audio & Video Labs, Inc. d/b/a Disc Makers, Inc. (hereinafter "Disc Makers Inc.") is a New Jersey corporation registered to do business in the State of New York. Disc Makers Inc. owns and operates CD Baby, an online music store specializing in the sale of compact discs ("CDs") and digital music downloads from independent musicians to consumers. CD Baby is also a digital aggregator of independent music recordings, distributing content to several online digital music retailers (or "Digital Distribution Partners," as defined below).

17.     Defendant Slush Puppie Tri-State, Inc. d/b/a GreatIndieMusic.com (hereinafter "GIM") is a Pennsylvania corporation with its principal place of business in Canonsburg, Pennsylvania.  GIM is an online digital music retailer.

18.     Defendant National Cinemedia, LLC (hereinafter "National Cinemedia") is a Delaware limited liability company registered to do business in the State of New York and with its principal place of business in Centennial, Colorado.  National Cinemedia is a cinema advertising company that provides on-screen advertising to over a thousand movie theatres nationwide, including several theaters within the state of New York.

19.     Defendant Screenvision Cinema Network, LLC (hereinafter "Screenvision") is a New York limited liability company with its principal place of business in New York City, New York. Screenvision is a cinema advertising company that provides on-screen advertising to thousands of movie theatres nationwide, including several theaters within the state of New York.

## JURISDICTION AND VENUE

20.     This is a civil action seeking damages for direct, contributory, and vicarious copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*.

21.     This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22.     This court has personal jurisdiction over the Defendants. KMA does continuous and systematic business in New York and this district. It maintains dealerships and employs personnel in New York and this district, and is thus physically present in the state. *See* N.Y. C.P.L.R. § 301. Kobalt has its principal place of business in New York and does continuous and systematic business in New York and this district. *See id.* Zync Music is a New York corporation and does continuous and systematic business in New York and this district. *See id.* Upon information and belief, David & Goliath also does continuous and systematic business in New York and in this district. *See id.* § 302(a)(1). Shook, Marz and BDB also do continuous and systematic business in New York and in this district. *See id.* Shook, Marz and BDB committed a tortious act causing injury to a person and property within the state and have derived substantial revenue from their business transactions in New York and this district. *See id.* § 302(a)(3)(i). TBS does continuous and systematic business in New York and this district. *See id.* § 302(a)(1). MTV has its principal place of business in New York and does continuous and systematic business in New York and this district. *See id.* § 301. Discovery does continuous

and systematic business in New York and this district. *See id.* § 302(a)(1). NBC has its principal place of business in New York and does continuous and systematic business in New York and this district. *See id.* § 301. ABC has its principal place of business in New York and does continuous and systematic business in New York and this district. *See id.* CBS is a New York corporation and does continuous and systematic business in New York and this district. *See id.* Fox does continuous and systematic business in New York. *See id.* § 302(a)(1). Disc Makers does continuous and systematic business in New York and this district. *See id.* Upon information and belief, GIM does continuous and systematic business in New York and this district. *See id.* National Cinemedia does continuous and systematic business in New York and this district. *See id.* Screenvision is a New York corporation with its principal place of business in New York and does continuous and systematic business in New York and this district. *See id.* § 301. All Defendants have also transacted business within New York and contracted to supply goods or services in New York in connection with the matters giving rise to this suit. *See id.* § 302(a)(1). All Defendants have also committed infringing acts outside of New York causing injury to Plaintiff in New York, and Defendants regularly do or solicit business in New York, and/or derive substantial revenue from goods used or services rendered in New York, and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce. *See id.* § 302(a)(3). In addition, Plaintiff is a resident of New York and has been injured in New York by Defendants' infringing conduct.

23.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 1400(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

24.     On or around February 2008, Plaintiff authored an original instrumental musical composition embodied in a sound recording or "beat" entitled "Feedback" (hereinafter, the "Beat").

25.     On or about March 31, 2008, Plaintiff registered with the U.S. Copyright Office a collection of musical compositions and sound recordings, including the Beat, in a single application, Registration No. SRu 915-477.

26.     On or around April 1, 2008, Plaintiff registered for a producer account under the name "Juno" with The Production MarketPlace (http://www.pmpworldwide.com) (hereinafter "PMP"), an online community whereby producers upload their beats for streaming in order to showcase their talents and market their services to potential buyers.

27.     All song files uploaded onto PMP are date/time stamped and issued an index number.  PMP then issues a username/password to users accessing music on a producer's page and a log file is kept for all user activity.  The PMP system is designed as a streaming system rather than a download system.  The only method provided for a user to download a track and save it to his files for personal use is to purchase the track and associated rights from the producer.

28.     On or around April 1, 2008, Plaintiff uploaded the Beat onto his PMP account.

29.     Plaintiff never consummated any sales or licensing arrangements through PMP with any of the Defendants, and cancelled his account on or around November 2008.

A.     THE INFRINGEMENT BY SHOOK

30.     On or before October 7, 2008, Plaintiff was contacted by Shook on a social networking site known as Myspace.com ("MySpace").  Shook expressed interest in purchasing

"individual tracks to mix" from Plaintiff for an "independent project." Shook referenced a few tracks that Plaintiff had available on his PMP page as the tracks he was interested in. However, communications failed to rise to the level of an implied license, actual license or assignment and broke down shortly after December 7, 2008.

31.    On or about February 18, 2009, Plaintiff reinitiated contact with Shook, who thereafter expressed his continued interest in two particular tracks. Shook, however, was unable to accurately identify the two tracks. Plaintiff then sent Shook copies of several tracks as an e-mail attachment in an effort to assist Shook in identifying the two tracks he expressed an interest in previously. The Beat was not included in the attachment sent to Shook. Again, communications failed to rise to the level of an implied license, actual license or assignment and broke down a second time on or around March 13, 2009.

32.    On or around April 2009, Plaintiff viewed a television commercial advertising the Kia Soul, a crossover utility vehicle manufactured by Kia Motors and distributed by KMA. Plaintiff immediately identified his Beat as part of the song that was used in this particular television commercial for the Kia Soul (hereinafter, the "Infringing Commercial").

33.    On or around April 20, 2009, Shook reinitiated contact with Plaintiff via e-mail. Attached to the e-mail was an audio file, constituting of a sample recording of the Beat, intended to identify the track that Shook had been interested in procuring rights for use or purchase. The Beat attached to Shook's e-mail to Plaintiff dated April 20, 2009, was never sent to Shook by Plaintiff at any time.

34.    Upon information and belief, Shook obtained a copy of Plaintiff's Beat by streaming the Beat available on Plaintiff's PMP account through a personal computer and plugging that computer's audio output into a second computer. The second computer, while

10

running a commercially available sound mixing and engineering software, can record the first computer's audio as it can any other instrument. This is the way Shook wrongfully obtained a high fidelity copy of Plaintiff's Beat without Plaintiff's knowledge or authorization. It was this illicitly obtained and unauthorized copy of Plaintiff's Beat that was sent to Plaintiff via e-mail by Shook.

35.     Suspicious over how Shook obtained the Beat and how KMA obtained the Beat for their commercial, Plaintiff responded to Shook's April 20, 2009 e-mail to him via text message from his cell phone stating unequivocally that the Beat was not for sale.

36.     On or about April 20, 2009, Shook responded via text message that he "really [had] somethin [sic] for it. It's for demo purposes only. I'm not gonna post it up anywhere or anything like that." Shook thereafter offered that he was ready to "shoot the money right now." Plaintiff reiterated that his Beat was not available for sale to him. Shook countered by offering to "treat it [the Beat] like instrumentals to mainstream songs that ppl [sic] practice stuff over.... It will be strictly on the low for my [Shook's] personal mixing and recording skills." Shook further stated "I respect that no moves can be made with it and I'm not in a position to do that..." Plaintiff did not respond to Shook and communications between the two broke down for a final time.

37.     Shook knew or should have known that Plaintiff is and at all times herein mentioned was located within the state of New York. Plaintiff's copyright registration for the Beat lists his address in the state of New York. The copy of the Beat illicitly obtained by Shook along with the Beat itself were originated and retained within the state of New York. Furthermore, Shook's initial contact with Plaintiff was by and through Plaintiff's Myspace page,

which prominently lists New York as his home, as well as Plaintiff's New York area code and telephone number.

38.     Shook knowingly licensed his illicitly obtained copy of Plaintiff's Beat to Marz and BDB. Marz created a song with the Beat titled "Do What You Do feat. Pack and Mumiez" by Marz (hereinafter, the "Infringing Song").

B.      THE INFRINGEMENT BY MARZ, BDB, AND ZYNC MUSIC

39.     The Infringing Song created by Marz and BDB that was commercially exploited and distributed by David & Goliath and KMA within the Infringing Commercials is and at all times mentioned herein without the consent, permission or license of Plaintiff.

40.     The American Society of Composers, Authors and Publishers (or "ASCAP") identifies Marz and Shook as co-authors of the Infringing Song. ASCAP does not list Plaintiff as a co-author of the Infringing Song.    Shook knowingly made false statements and misrepresentations to ASCAP in his fraudulent registration of the Infringing Song.

41.     Marz recorded his vocal performance as well as the performances of other artists under the BDB label over the unauthorized copy of Plaintiff's Beat. In this way, Marz and BDB produced the Infringing Song from an unauthorized derivative work of the Beat, which was stolen by Shook, without Plaintiff's knowledge or authorization.

42.     Upon information and belief, Marz and BDB have publicly performed and continue to publicly perform the Infringing Song at different venues across the United States.

43.     On or about May 5, 2010, Marz and BDB released a full length album entitled "Candy Days: Marz Presents Billion Dollar Ballers" (hereinafter "Candy Days") that included the Infringing Song.

44.     On or before May 5, 2010, Marz or his representative uploaded a copy of the album "Candy Days," which includes the Infringing Song, onto Disc Maker Inc.'s computers, where the album and individual tracks may be purchased for full download.

45.     At that time, Disc Makers Inc. partnered with a number of other online music vendors (collectively, "Digital Distribution Partners"), so that users of the CD Baby distribution service may also distribute their content by way of the Digital Distribution Partners digital distribution networks.

46.     By uploading copies of their content onto the Disc Makers Inc.'s computers, users of the CD Baby service may select individual Digital Distribution Partners for the digital distribution of their content with the knowledge and intention that their content would be distributed for purchase by the public by way of the CD Baby distribution network as well as the distribution network(s) of the Digital Distribution Partner(s) specified. Under this arrangement, copies of the content would be reproduced by CD Baby's computers and distributed to the computers *of* the Digital Distribution Partners.

47.     When uploading the album "Candy Days," Marz or his representative selected a number of Digital Distribution Partners, including GIM, Amazon Inc. (Amazon MP3), Microsoft Corp. (Zune), Napster, LLC, and Apple Inc. (iTunes).   Marz or his representative made these selections with the knowledge and intent that the Infringing Song would be available for purchase by the public by way of Disc Maker Inc.'s digital distribution networks as well as the specified Digital Distribution Partners' digital distribution networks (Disc Makers Inc. and specified Digital Distribution Partners hereinafter collectively referred to as the "Infringing Music Vendors").

48.     Upon information and belief, customers of the Infringing Music Vendors, including customers located within the state of New York, have in fact purchased and downloaded copies of "Candy Days" and/or copies of the Infringing Song.

49.     Marz, BDB and/or their authorized agent(s) maintain a website (http://www.marz.ws) (hereinafter, the "Marz Website") in which a music video for the Infringing Song appears on the site's landing page (hereinafter, the "Infringing Video"). The Marz Website also links to third party vendors whereby users could have purchased Marz's albums, including "Candy Days."

50.     Upon information and belief, there exists, and at all times herein mentioned, a unity of interests and ownership between Marz and BDB, such that any individuality and separateness has ceased and BDB is the alter ego of Marz.

51.     Marz and BDB licensed the Infringing Song to David & Goliath with full knowledge that David & Goliath intended to use and incorporate the Infringing Song in an anticipated advertising campaign.

52.     Marz and BDB licensed the Infringing Song to various third parties with full knowledge that these third parties intended to reproduce, synchronize, publicly perform and otherwise incorporate it in the creation of the Infringing Video for distribution.

53.     On or about September 8, 2009, Marz, BDB and Shook transferred and/or assigned its rights and interests to the Infringing Song to Zync Music.

54.     On or about October 8, 2009, Zync Music entered into an Administration Agreement with Kobalt to administer certain rights of the Infringing Song on Zync's behalf with third parties in order to, among other things, collect substantial revenues from the exploitation of

the Infringing Song, grant mechanical licenses to the Infringing Song and administer worldwide rights for digital distribution of the Infringing Song.

55.     Upon information and belief, Marz and BDB have distributed, licensed, offered for sale and sold several other albums in addition to "Candy Days" within the state of New York, thereby regularly soliciting and transacting business, as well as supplying goods and deriving substantial revenue from the goods used and sold in the state of New York.

C.     THE INFRINGEMENT BY ZYNC MUSIC AND KOBALT

56.     On or about October 8, 2009, Zync Music entered into an Administration Agreement with Kobalt to administer certain rights of the Infringing Song on Zync's behalf with third parties in order to, among other things, collect substantial revenues from the exploitation of the Infringing Song, grant mechanical licenses to the Infringing Song and administer worldwide rights for digital distribution of the Infringing Song.

57.     On or about January 24, 2010, Zync Music and Kobalt entered into an agreement to amend the Administration Agreement to extend Kobalt's authority to administer certain rights of the Infringing Song on Zync's behalf, including the exclusive right to grant synchronization licenses to the Infringing Song and to collect and receive all mechanical and performing rights royalties and fees with respect to such synchronization licenses.

58.     As publishers and administrators together, Zync and Kobalt administer the exploitation of the Infringing Song.  As an administrator, Kobalt administers Zync Music, Marz, and Shook's rights to collect royalties from the exploitation of the Infringing Song.  Upon information and belief, Kobalt collects fees for its services and continues to derive income and profits from the infringement of Plaintiff's Beat.

59.     As publisher and administrator of the Infringing Song, Zync together with Kobalt maintains the right and ability to supervise and control the use and exploitation of the Infringing Song and any derivatives thereof.

60.     Upon information and belief, Zync together with Kobalt have also licensed the Infringing Song for use by various third parties for the creation of derivative works, such as the Infringing Video and the Infringing Commercial.

61.     Plaintiff has never authorized, licensed or otherwise permitted Kobalt or Zync to reproduce, distribute, license or sell copies of the Beat or the works derived therefrom.

D.     THE INFRINGEMENT BY KMA AND DAVID & GOLIATH

62.     On or around March 2009, KMA launched an aggressive multi-media advertising campaign titled "A New Way To Roll" (hereinafter, the "Campaign").   The Campaign was launched across several media channels, including movie theaters, television, live events, and online and social media.

63.     The Campaign focused on a series of television commercials (or "spots") which depicted four hipster hamsters driving the Kia Soul, thereby distinguishing themselves from the other hamsters operating hamster wheels.  The spots were produced from a single sixty (60) second video play and employed a novel concept, whereby a series of songs, including the Infringing Song, were rotated in synchronization with the video play.  A corresponding thirty (30) second edited spot was produced from each sixty (60) second spot.  Thus, a series of spots were produced, including a sixty (60) second Infringing Commercial and thirty (30) second Infringing Commercial (hereinafter collectively referred to as the "Infringing Commercials"), each synchronizing nearly the same video play with a different song.

64.     Each video play referenced the particular song being used by displaying the song title and artist name on a portable music player, namely, an mp3 player, used by a hamster riding the Kia Soul.  In this way, the Infringing Commercials referenced the Infringing Song as "Do What You Do feat. Pack and Mumiez" by Marz.  The Infringing Commercials did not reference Plaintiff or his Beat.

65.     The Campaign was designed to reach a younger, urban, and technologically savvy demographic in United States and Canadian markets and capitalized on a wide variety of media. The spots, including one or both of the Infringing Commercials, were initially released in movie theaters served by National Cinemedia and Screenvision.  The theater spots played through on or around April 1, 2009.

66.     On or around April 1, 2009, the television portion of the Campaign was launched. The spots were broadcasted across several major television networks and cable channels, balancing prime time and some late night.  Focusing on a younger demographic, the Campaign, including the Infringing Commercials, were broadcast on several cable channels, including Adult Swim, Discovery Channel, MTV and Comedy Central (collectively, the "Infringing Cable Channels"), and network channels, including NBC, ABC, CBS and Fox (collectively, the "Infringing Network Channels").

67.     The Campaign also capitalized on online and social media.  On or around March 27, 2009, three spots, including the sixty (60) second Infringing Commercial (or "Extended Infringing Commercial"), were uploaded onto KMA's official YouTube account.  YouTube is an online video hosting service whereby users may upload user-created videos onto their account, rendering the video available by search to all YouTube users.

68. YouTube users did in fact view the Extended Infringing Commercial by streaming the Extended Infringing Commercial on their computers. By July 22, 2010, views for the Infringing Commercial numbered approximately 1,018,500, representing approximately 75% of the total views for all three spots combined.

69. Upon information and belief, the Infringing Song was also available online for full download on a microsite advertising the Kia Soul located at http://www.kiasoul.com (hereinafter, the "Kia Website").

70. Upon information and belief, users of the Kia Website did in fact download the Infringing Song onto their computers.

71. KMA employed David & Goliath, which is authorized to and does do business in the state of New York, to produce the media for the Campaign, including the Infringing Commercials, the Kia Website, and KMA's official YouTube account. Upon information and belief, KMA and David & Goliath worked in concert to distribute the Campaign in movie theaters, on television and online to markets nationwide, including New York. Both KMA and David & Goliath are administering KMA's official YouTube site and the Kia microsite.

72. The Campaign was widely popular. Commentators and KMA spokespersons alike attribute a significant portion of the high level of sales for the Kia Soul to the Campaign.

73. The Campaign, including the Infringing Commercials, won the 2009 EFFIE AWARD in the "David v. Goliath" category, which grants awards to smaller, new or emerging brands that challenge category leaders head on. The Infringing Commercials also won the 2009 Nielsen's Automotive Ad of the Year.

74.     Capitalizing on the success of the Campaign, KMA has more recently brought back the hamsters for the "This or That" campaign,[1] which was launched in May 2010 through a multitude of media channels including theatres, television and online and social media to advertise the Kia Soul to consumers.

75.     In this way, Plaintiff's Beat has been used to produce a song, a music video and television commercials. These unauthorized derivative works have been publicly performed nationwide in movie theaters, on television and at live events. They have also been distributed online globally. Thus, Plaintiff's Beat has been exploited in nearly every format imaginable and Plaintiff's copyright in the Beat has been exhausted of all economic value.

### COUNT I
### DIRECT COPYRIGHT INFRINGEMENT
### (Against Defendant Shook)

76.     Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

77.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, the owner of a copyright has the exclusive right to reproduce, distribute, publicly perform, and create derivative works based on the copyrighted work or authorize the reproduction, distribution, public performance, and creation of derivative works based on the copyrighted work.

78.     Shook willfully, intentionally and purposefully copied Plaintiff's Beat from Plaintiff's PMP account with full knowledge of Plaintiff's exclusive copyrights in the Beat and in disregard of and indifferent to the rights of Plaintiff.

---

[1] The "A New Way To Roll" advertising campaign and the "This Or That" advertising campaign may be treated as separate launches or iterations of the same advertising campaign. For the sake of simplicity, this First Amended Complaint treats the "A New Way To Roll" advertising campaign as separate and distinct from the "This Or That" advertising campaign.

79.    Shook willfully, intentionally and purposefully reproduced, distributed, licensed and/or sold copies of Plaintiff's Beat to various parties with full knowledge of Plaintiff's exclusive copyrights in the Beat and in disregard of and indifferent to the rights of Plaintiff.

80.    Shook willfully, intentionally and purposefully reproduced, distributed, licensed and/or sold copies of the Infringing Song, which contains substantial and significant portions of Plaintiff's Beat, to various parties with full knowledge of Plaintiff's exclusive copyrights in the Beat and in disregard of and indifferent to the rights of Plaintiff.

81.    Shook's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

82.    As a direct and proximate result of Shook's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

83.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

84.    As a direct and proximate result of Shook's willful copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendant Shook will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT II
## DIRECT COPYRIGHT INFRINGEMENT
### (Against Defendants Marz and BDB)

85.     Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

86.     Defendants, without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

87.     Upon information and belief, Marz, by and through BDB, produced the Infringing Song as a derivative work of Plaintiff's Beat.

88.     Upon information and belief, Marz, by and through BDB, distributed a copy of the Infringing Song to David & Goliath, distributed a copy of the Infringing Song to third party vendors for commercial sale to the public, and distributed a copy of the Infringing Song to other third party users for the purpose of creating derivative works, such as the Infringing Video.

89.     As a direct and proximate result of Marz and BDB's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

90.     Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

91.     As a direct and proximate result of Marz and BDB's willful copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and

21

irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Marz and BDB will continue to infringe Plaintiff's copyright in the Beat. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT III
### DIRECT COPYRIGHT INFRINGEMENT
### (Against Defendant Kobalt)

92.     Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

93.     Kobalt, without authority, is making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work. Kobalt's conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

94.     As publisher for the Infringing Song, Kobalt distributed the Infringing Song, which contains substantial and significant portions of Plaintiff's Beat.

95.     Upon information and belief, as publisher for the Infringing Song, Kobalt reproduced and distributed and continues to reproduce and distribute copies of the Infringing Song to third party vendors for commercial sale to the public, and had otherwise licensed the Infringing Song for use by various third parties for the creation of derivative works, such as the Infringing Video and/or the Infringing Commercials.

96.     As a direct and proximate result of Kobalt's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. §

504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

97.     Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

98.     As a direct and proximate result of Kobalt's copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Kobalt will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

**COUNT IV**
**DIRECT COPYRIGHT INFRINGEMENT**
**(Against Defendant Zync Music)**

99.     Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

100.     Zync Music, without authority, is making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work.  Zync Music's conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

101.     As publisher for the Infringing Song, Zync Music distributed a copy of the Infringing Song, which contains substantial and significant portions of Plaintiff's Beat, to David & Goliath.

102.     Upon information and belief, as publisher for the Infringing Song, Zync Music reproduced and distributed and continues to reproduce and distribute copies of the Infringing

Song to third party vendors for commercial sale to the public, and had otherwise licensed the Infringing Song for use by various third parties for the creation of derivative works, such as the Infringing Video and/or the Infringing Commercials.

103.   As a direct and proximate result of Zync Music's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

104.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

105.   As a direct and proximate result of Zync Music's copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Zync Music will continue to infringe Plaintiff's copyright in the Beat.   Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT V
### DIRECT COPYRIGHT INFRINGEMENT
### (Against Defendant David & Goliath)

106.   Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

107.   David & Goliath, without authority, is making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted

work. David & Goliath's conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

108.   David & Goliath has synchronized the Infringing Song, which contains substantial and significant portions of Plaintiff's Beat, to a sixty (60) second video play and a corresponding thirty (30) second edit, thereby producing the Infringing Commercials as derivative works of Plaintiff's Beat.

109.   Upon information and belief, David & Goliath has reproduced and distributed copies of the Infringing Commercials to KMA.

110.   Upon information and belief, David & Goliath has reproduced and distributed copies of the Infringing Commercial to various movie theaters, television networks, and cable channels.

111.   Upon information and belief, David & Goliath has uploaded the Infringing Song onto a computer that hosts the Kia Website, producing a copy of the Infringing Song on that computer, thereby making the Infringing Song available for full download from the Kia Website.

112.   As a direct and proximate result of David & Goliath's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

113.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

114.   As a direct and proximate result of David & Goliath's copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury,

for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, David & Goliath will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT VI
## DIRECT COPYRIGHT INFRINGEMENT
### (Against Defendant KMA)

115.    Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

116.    KMA, without authority, is making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work.  KMA's conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

117.    KMA has distributed copies of the Infringing Commercials, which contains substantial and significant portions of Plaintiff's Beat, to various movie theaters, television networks, and cable channels.

118.    Upon information and belief, KMA has uploaded the Infringing Song, which contains substantial and significant portions of Plaintiff's Beat, onto a computer that hosts the Kia Website, producing a copy of the Infringing Song on that computer, thereby making the Infringing Song publicly available for full download from the Kia Website.

119.    Upon information and belief, users of the Kia Website, including users in the State of New York, did in fact download copies of the Infringing Song.

120.    Upon information and belief, KMA has uploaded the Extended Infringing Commercial onto a computer that hosts KMA's official YouTube account, producing a copy of

the Extended Infringing Commercial on that computer, and thereby making the Infringing Commercial publicly available.

121.   As a direct and proximate result of KMA's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

122.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

123.   As a direct and proximate result of KMA's copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, KMA will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT VII
### DIRECT COPYRIGHT INFRINGEMENT
**(Against Defendants TBS, MTV, Discovery, NBC, ABC, CBS and Fox)**

124.   Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

125.   Defendants, without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

126.    TBS, MTV, and Discovery, as the owners and operators of the Infringing Cable Channels, and NBC, ABC, CBS and Fox, as the owners and operators of the Infringing Network Channels, have reproduced and distributed copies of and publicly performed nationwide the Infringing Commercials, which contain substantial and significant portions of Plaintiff's Beat, as part of KMA's "A New Way to Roll" Campaign.

127.    Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce, distribute and publicly perform his copyrighted work.

128.    As a direct and proximate result of the infringement of Plaintiff's copyrights and exclusive rights under copyright by TBS, MTV, Discovery, NBC, ABC, CBS and Fox, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

129.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

130.    As a direct and proximate result of the copyright infringement by TBS, MTV, Discovery, NBC, ABC, CBS, and Fox, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

**COUNT VIII**
**DIRECT COPYRIGHT INFRINGEMENT**
**(Against Defendants Disc Makers Inc. and GIM)**

131.    Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

132.    Defendants, without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

133.    Disc Makers Inc. and GIM have reproduced and distributed copies of the Infringing Song, which contains substantial and significant portions of Plaintiff's Beat, and the album "Candy Days," which includes the Infringing Song, to consumers nationwide and to various digital distribution networks.

134.    Upon information and belief, customers of Disc Makers Inc. and GIM, including customers located within the state of New York, did purchase and download the Infringing Song.

135.    Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce, distribute and publicly perform his copyrighted work.

136.    Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

137.    As a direct and proximate result of the infringement of Plaintiff's copyrights and exclusive rights under copyright by Disc Makers Inc. and GIM, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

138.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

139.   As a direct and proximate result of the copyright infringement by Disc Makers Inc. and GIM, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, the Infringing Music Vendors will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT IX
### DIRECT COPYRIGHT INFRINGEMENT
### (Against Defendants National Cinemedia and Screenvision)

140.   Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

141.   Defendants, without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's registered copyrighted work. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce his copyrighted work.

142.   National Cinemedia and Screenvision have reproduced and distributed copies of the Infringing Commercial, which contains substantial and significant portions of Plaintiff's Beat, to movie theaters nationwide as part of Defendant KMA's "A New Way to Roll" Campaign.

143.   Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce, distribute and publicly perform his copyrighted work.

144.    As a direct and proximate result of the infringement of Plaintiff's copyrights and exclusive rights under copyright by National Cinemedia and Screenvision, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

145.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

146.    As a direct and proximate result of the copyright infringement by National Cinemedia and Screenvision, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, National Cinemedia and Screenvision will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT X
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against Defendant Shook)

147.    Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

148.    Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without

authorization. Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

149.    Shook is liable as a contributory copyright infringer for the infringing acts of the other Defendants. Shook has enabled, induced, facilitated, and materially contributed to each act of infringement by the other Defendants.

150.    Shook has actual and constructive knowledge that the other Defendants are reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization.

151.    Acting with this actual and constructive knowledge, Shook enables, facilitates, and materially contributes to the other Defendants' copyright infringement, which could not occur without Shook's enablement and wrongdoing.

152.    Shook wrongfully obtained a copy of Plaintiff's Beat and materially contributed to the other Defendants' reproduction, distribution, public performance and creation of derivative works based on the copyrighted work of Plaintiff, all without authorization. Shook enabled, induced and facilitated each act of infringement by the other Defendants with full knowledge of their intentions to reproduce, distribute, publicly perform and create derivative works based on the copyrighted work of Plaintiff.

153.    Defendant's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

154.    As a direct and proximate result of Shook's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. §

504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

155. Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

156. As a direct and proximate result of Shook's willful contributory copyright infringement, Plaintiff suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Shook will continue to infringe Plaintiff's copyright in the Beat. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XI
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Defendant Disc Makers Inc.)

157. Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if fully set forth herein.

158. Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization. Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

159. Disc Makers Inc. is liable as a contributory copyright infringer for the infringing acts of the other Infringing Music Vendors. Disc Makers Inc. has enabled, induced, facilitated, and materially contributed to each act of infringement by the other Infringing Music Vendors.

160.   Disc Makers Inc. was given notice that the Infringing Song infringed Plaintiff's exclusive rights in his registered copyrighted work but failed notify the other Infringing Music Vendors within a reasonable amount of time.

161.   Disc Makers Inc. had actual and constructive knowledge that the other Infringing Music Vendors are reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization.

162.   Acting with this actual and constructive knowledge, Disc Makers Inc. enables, facilitates, and materially contributes to the other Infringing Music Vendors' copyright infringement, which could not occur without Disc Makers Inc.'s enablement and wrongdoing.

163.   Disc Makers Inc. wrongfully obtained a copy of Plaintiff's Beat and materially contributed to the other Infringing Music Vendors' reproduction, distribution, public performance and creation of a derivative work based on the copyrighted work of Plaintiff, all without authorization.   Disc Makers Inc. enabled, induced and facilitated each act of infringement by the other Infringing Music Vendors with full knowledge of their intentions to reproduce, distribute, publicly perform and create a derivative work based on the copyrighted work of Plaintiff.

164.   Defendant's acts of contributory infringement were willful, intentional and in disregard of Plaintiff's copyright in the Beat.

165.   As a direct and proximate result of Disc Makers Inc.'s infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).   Alternatively, at Plaintiff's election, pursuant to 17

U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

166.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

167.   As a direct and proximate result of Disc Makers Inc.'s willful contributory copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Disc Makers Inc. will continue to infringe Plaintiff's copyright in the Beat.   Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XII
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Defendants Marz and BDB)

168.   Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

169.   Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization.   Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

170.   As the licensor of the Infringing Song, Marz and BDB have the right and ability to supervise and control the Infringing Music Vendors and others' infringement of Plaintiff's

copyright. By licensing and authorizing the exploitation of the Infringing Song, Marz and BDB have failed to supervise and control the Infringing Music Vendors and others' infringement of the Plaintiff's copyright.

171.  Upon information and belief, Marz and BDB have derived, and continue to derive, direct financial benefit from the infringement of Plaintiff's copyrights by the Infringing Music Vendors and others, including, without limitation, income and royalties generated from the reproduction, distribution, public performance and creation of derivative works based on the copyrighted work.

172.  As a direct and proximate result of Marz and BDB's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

173.  Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

174.  As a direct and proximate result of Marz and BDB's vicarious copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Marz and BDB will continue to infringe Plaintiff's copyright in the Beat. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XIII
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Defendant Kobalt)

175. Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

176. Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization. Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

177. As publisher and administrator of the Infringing Song at all relevant times, Kobalt has the right and ability to supervise and control others' infringement of Plaintiff's copyright. By authorizing the exploitation of the Infringing Song, Kobalt has failed to supervise and control others' infringement of Plaintiff's copyrights.

178. Upon information and belief, Kobalt has derived, and continues to derive, direct financial benefit from the infringement of Plaintiff's copyrights by others, including, without limitation, income and royalties generated from the reproduction, distribution, public performance and creation of derivative works based on the copyrighted work.

179. As a direct and proximate result of Kobalt's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

180.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

181.   As a direct and proximate result of Kobalt's vicarious copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Kobalt will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XIV
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Defendant Zync Music)

182.   Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

183.   Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization.  Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

184.   As publisher and administrator of the Infringing Song at all relevant times, Zync Music has the right and ability to supervise and control others' infringement of Plaintiff's copyright.  By authorizing the exploitation of the Infringing Song, Zync Music has failed to supervise and control others' infringement of Plaintiff's copyrights.

185.   Upon information and belief, Zync Music has derived, and continues to derive, direct financial benefit from the infringement of Plaintiff's copyrights by others, including, without limitation, income and royalties generated from the reproduction, distribution, public performance and creation of derivative works based on the copyrighted work.

186.   As a direct and proximate result of Zync Music's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

187.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

188.   As a direct and proximate result of Zync Music's vicarious copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Zync Music's will continue to infringe Plaintiff's copyright in the Beat. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XV
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Defendant David & Goliath)

189.   Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

190.   Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or

creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization. Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

191.    As producer of the Infringing Commercials and administrator of the Kia Website and KMA's official YouTube account at all relevant times, David & Goliath has the right and ability to control and supervise KMA and others' infringement of Plaintiff's copyright.  By authorizing the exploitation of the Infringing Commercials, David & Goliath has failed to supervise and control KMA and others' infringement of Plaintiff's copyright.

192.    Upon information and belief, David & Goliath has derived, and continues to derive, direct financial benefit from the infringing activities of KMA and others, including, without limitation, those fees and/or commissions collected from KMA for the production of the Infringing Commercials and administration of the Kia Website and KMA's official YouTube account.

193.    As a direct and proximate result of David & Goliath's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

194.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

195.    As a direct and proximate result of David & Goliath's vicarious copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and

irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, David & Goliath will continue to infringe Plaintiff's copyright in the Beat. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XVI
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Defendant KMA)

196.    Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

197.    Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization. Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

198.    By employing David & Goliath to produce the Infringing Commercials and as administrator of the Kia website and KMA's official YouTube account, KMA has the right and ability to control and supervise David & Goliath and others' infringement of Plaintiff's copyright. By authorizing the production and exploitation of the Infringing Commercials, KMA has failed to control and supervise David & Goliath and others' infringement of Plaintiff's copyright.

199.    Upon information and belief, KMA has derived, and continues to derive, direct financial benefit from the infringing activities of David & Goliath and others, including, without

limitation, revenue generated by sales of the Kia Soul attributable to the Infringing Commercial and the Infringing Song.

200.    As a direct and proximate result of KMA's infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

201.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

202.    As a direct and proximate result of KMA's vicarious copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, KMA will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XVII
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Defendant Disc Makers Inc.)

203.    Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

204.    Defendants and others have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without

authorization. Defendants and others are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

205.   In licensing and distributing the Infringing Song to other Infringing Music Vendors, Disc Makers Inc. has the right and ability to supervise and control GIM and other Infringing Music Vendors' infringement of Plaintiff's copyright.   By licensing and authorizing the exploitation of the Infringing Song, Disc Makers Inc. has failed to supervise and control GIM's and other Infringing Music Vendors' infringement of the Plaintiff's copyright.

206.   Upon information and belief, Disc Makers Inc. has derived, and continues to derive, direct financial benefit from the infringement of Plaintiff's copyrights by GIM and other Infringing Music Vendors, including, without limitation, income and royalties generated from the reproduction, distribution, public performance and creation of derivative works based on the copyrighted work.

207.   As a direct and proximate result of Disc Makers Inc.'s infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

208.   Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

209.   As a direct and proximate result of Disc Makers Inc.'s vicarious copyright infringement, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Unless enjoined and restrained by this Court, Disc Makers Inc. will continue to infringe Plaintiff's copyright in the Beat.

Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT XIII
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Defendants National Cinemedia and Screenvision)

210.    Plaintiff realleges and incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

211.    National Cinemedia and Screenvision have reproduced and distributed copies of the Infringing Commercials, which contain substantial and significant portions of Plaintiff's Beat, to various movie theaters nationwide (hereinafter the "Infringing Theaters") as part of Defendant KMA's "A New Way to Roll" Campaign.

212.    The Infringing Theaters have infringed and are infringing Plaintiff's rights in his registered copyrighted work by, *inter alia*, reproducing, distributing, publicly performing, or creating derivative works based on the copyrighted work, or authorizing the reproduction, distribution and creation of derivative works based on the copyrighted work, all without authorization.   The Infringing Theaters are therefore directly infringing Plaintiff's exclusive rights under 17 U.S.C. § 106.

213.    In licensing and distributing the Infringing Commercials to the Infringing Theaters, National Cinemedia and Screenvision have the right and ability to supervise and control the infringement of Plaintiff's copyright by the Infringing Theaters.  By licensing and authorizing the exploitation of the Infringing Commercials, National Cinemedia and Screenvision have failed to supervise and control the Infringing Theaters' infringement of the Plaintiff's copyright.

214.    Upon information and belief, National Cinemedia and Screenvision have derived, and continue to derive, direct financial benefit from the infringement of Plaintiff's copyrights by the Infringing Theaters, including, without limitation, income and royalties generated from the reproduction, distribution, public performance and/or creation of derivative works based on the copyrighted work.

215.    As a direct and proximate result of infringement of Plaintiff's copyrights and exclusive rights under copyright by National Cinemedia and Screenvision, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

216.    Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

217.    As a direct and proximate result of the vicarious copyright infringement by National Cinemedia and Screenvision, Plaintiff has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, National Cinemedia and Screenvision will continue to infringe Plaintiff's copyright in the Beat.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

    a.    For a declaration that Defendants infringe Plaintiff's copyright both directly and secondarily;

b.      For a declaration that all of Defendants' rights in any infringing works, including but not limited to the Infringing Song, the Infringing Commercial and Infringing Video, and any recordings embodying those works, are null and void, and declaring Plaintiff the owner of all such rights in said works and recordings;

c.      For a permanent injunction requiring that Defendants and their agents, officers, representatives, operatives, distributors, employees, servants, successors, assigns and attorneys and all those in active concert or participation with them, cease directly or indirectly, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of Plaintiff's respective copyrights or exclusive rights protected by the Copyright Act in the Beat, including but not limited to, manufacturing, creating, producing, recording, advertising, copying, displaying, marketing, performing, reproducing, importing, selling, offering for sale, and/or distributing any item(s) which contains unauthorized portions of Plaintiff's Beat;

d.      For a declaration directing Defendants to recall, seize and impound any and all copies of materials which contain unauthorized portions of Plaintiff's Beat, including but not limited to, all records, audio and video tapes, digital audio tapes, digital video discs, and compact discs;

e.      For a declaration directing Defendants to cancel and declare void any and all contracts, including but not limited to, contracts with artists, producers, distributors, retailers, wholesalers, online service providers and television networks that involve materials which contain unauthorized portions of Plaintiff's Beat;

f.       For a declaration directing Defendants to disseminate corrective advertising to ameliorate the adverse consequences of their infringing and/or unlawful acts; the content, nature, form and extent of which is to be approved by Plaintiff and this Court;

g.       For a declaration imposing a constructive trust over those monies obtained by Defendants as a result of their copyright infringement;

h.       For a declaration directing Defendants to account for all gains, profits, savings and advantages realized by Defendants from the aforesaid infringing and unlawful acts;

i.       For statutory damages pursuant to 17 U.S.C. § 504(c).  Furthermore, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), for actual damages plus Defendants' profits from infringement, as will be proven at trial;

j.       For Plaintiff's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

k.       For pre- and post-judgment interest according to law; and

l.       For such other and further relief as the Court deems just, proper and equitable under the circumstances.

### JURY DEMAND

Plaintiff respectfully requests a jury trial.

Respectfully submitted,

Dated: November 5, 2010           **HANTMAN & ASSOCIATES**

By: _____
Robert J. Hantman
1515 Broadway, 11th Fl.

New York, New York 10036
(212) 684-3933
(212) 520-4301 facsimile
rhantman@hantmanlaw.com

AND

**KAYIRA, LLP**


By:   /s/ Eric F. Kayira
          Eric F. Kayira,
          ***Pending Pro Hac Vice Admission***
          Brent A. Sumner,
          ***Pending Pro Hac Vice Admission***
          1001 Craig Road, Suite 305
          St. Louis, Missouri 63146
          (314) 872-2141
          (314) 872-2140 facsimile
          Eric.kayira@kayiralaw.com
          Brent.sumner@kayiralaw.com

          *Attorneys for Plaintiff*

48